ERICA A. MAHARG (Bar No. 279396)
GEORGE TORGUN (Bar No. 222085)
SAN FRANCISCO BAYKEEPER
785 Market Street, Suite 850
San Francisco, California 94103
Telephone: (415) 856-0444
Facsimile: (415) 856-0443
Email: erica@baykeeper.org
Email: george@baykeeper.org

Attorneys for Plaintiff
SAN FRANCISCO BAYKEEPER

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER, a California non-profit corporation, | Case No.: 5:15-cv-00208 |
| Plaintiff, | **[~~PROPOSED~~] CONSENT DECREE** |
| v. | **(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*)** |
| MUOI PHAN dba B2 AUTO DISMANTLER, | |
| Defendant. | |

**CONSENT DECREE**

WHEREAS, San Francisco Baykeeper, Inc. ("Baykeeper") is a non-profit public benefit corporation dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of the San Francisco Bay and other area waters;

WHEREAS, Muoi Phan doing business as B2 Auto Dismantler ("B2 Auto") operates an automobile dismantling facility located at 245 and 275 Leo Avenue, San Jose, California 95112, WDID #2 43IO12880 (the "Facility") (Baykeeper and B2 Auto are collectively referred to as the "Parties" to this Consent Decree ("Decree"));

WHEREAS, stormwater discharges associated with industrial activity at the Facility are regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 92-12-DWQ (as amended by Water Quality Order 97-03-DWQ), issued pursuant to Section 402 of the Federal Water Pollution Control Act, 33 U.S.C. §1342 (hereinafter "Industrial Stormwater Permit"). These industrial activities include, *inter alia*, the dismantling and wrecking of used motor vehicles to recycle and resell parts;

WHEREAS, effective July 15, 2015, stormwater discharges associated with industrial activity will be regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES"), General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 2014-0057-DWQ, issued pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342 (hereinafter "New General Permit");

WHEREAS, the Industrial Stormwater Permit includes the following requirements for all permittees, including B2 Auto: (1) develop and implement a stormwater pollution prevention plan ("SWPPP"); (2) control pollutant discharges using, as appropriate, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants; (3) implement BAT and BCT through the development and application of structural and non-structural Best Management Practices ("BMPs"), which must be included and updated in the SWPPP; and (4) when necessary, implement additional BMPs to prevent or reduce any pollutants that are causing or contributing to any exceedance of water quality standards;

1    WHEREAS, on October 22, 2014, Baykeeper served B2 Auto, the Administrator of the United

2  States Environmental Protection Agency ("EPA") Region IX, the Executive Director of the State

3  Water Resources Control Board ("State Water Board"), the Executive Officer of the Regional Water

4  Quality Control Board ("Regional Water Board"), the U.S. Attorney General, and the Administrator of

5  the EPA with a notice of intent to file suit ("60-Day Notice") under Section 505(b)(1)(A) of the

6  Federal Water Pollution Control Act ("Clean Water Act" or "the Act"), 33 U.S.C. § 1365(b)(1)(A),

7  alleging violations of the Act and the Industrial Stormwater Permit at the Facility;

8    WHEREAS, on December 19, 2014, B2 Auto implemented a revised storm water pollution

9  prevention plan ("SWPPP") at the Facility that included new and modified BMPs for controlling and

10 reducing the levels of potential pollutants in the Facility's storm water discharges;

11   WHEREAS, on January 14, 2015, Baykeeper filed a complaint ("Complaint") alleging certain

12 violations of the Act and the Industrial Stormwater Permit at the Facility;

13   WHEREAS, B2 Auto denies all allegations and claims contained in the Complaint and reserves

14 all rights and defenses with respect to such allegations and claims;

15   WHEREAS, B2 Auto denies the occurrence of the violations alleged in the Notice Letter and

16 maintains that B2 Auto has complied at all times with the provisions of the Industrial Stormwater

17 Permit and the Clean Water Act;

18   WHEREAS, the Parties believe it is in their mutual interest and choose to resolve in full

19 Baykeeper's allegations in the 60-Day Notice and Complaint through settlement and avoid the cost and

20 uncertainties of further litigation;

21   WHEREAS, this Decree shall be submitted to the United States Department of Justice for the 45-

22 day statutory review period, pursuant to 33 U.S.C. § 1365(c); and shall thereafter be submitted for entry

23 as an Order of the Court, the date of which Order shall be referred to herein as the "Court Approval

24 Date";

25   NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING

26 PARTIES, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:

27 / / /

28 / / /

## I.      BEST MANAGEMENT PRACTICES

1.      In order to further reduce or further prevent pollutants associated with industrial activity from discharging via stormwater to the waters of the United States, B2 Auto shall implement additional appropriate structural and non-structural BMPs, as described more fully below, in compliance with the requirements of the Industrial Stormwater Permit, the New General Permit, and the Clean Water Act.

2.      **Site Map**:  No later than April 1, 2015, B2 Auto shall update the Site Map included in the Facility SWPPP.  The Site Map shall identify property boundaries, ground type (pervious or impervious), berms and the materials they are composed of, any permanent structures and features, known or suspected storm drain inlets, discharge point(s), sampling point(s) identified in the Facility SWPPP (hereinafter "Designated Sampling Point(s)"), and all other physical structures or items relevant under the Industrial Stormwater Permit and pursuant to this Decree.  While the Decree is in effect, if B2 Auto makes any changes to the Designated Sampling Points or discharge points at the Facility, B2 Auto shall update the SWPPP within forty-five (45) days and submit the revised SWPPP to Baykeeper within ten (10) business days thereafter, in accordance with Paragraph 6.

3.      **Non-Structural Best Management Practices.**  Beginning on March 9, 2015 (unless otherwise noted), B2 Auto shall implement the following non-structural BMPs:

      a.      **Storm Drain Inlet/Catch Basin Best Management Practices**:

          i.      <u>Storm Drain Inlet/Designated Sampling Point Inspections</u>:  Between March 9 and March 16, 2015, and between September 1 and October 1 of each year, B2 Auto shall inspect any storm drain inlets, catch basins, Designated Sampling Point, discharge points, filtration/treatment devices, and other BMPs in place at the Facility.  B2 Auto shall promptly clean, as needed, each drain inlet, catch basin, Designated Sampling Point, discharge point, filtration/treatment device, and other BMPs in order to remove any accumulated dust, sediment, solids, or debris. During the dry season (June 1-September 30), B2 Auto shall continue the practice of covering inlets with an impervious device.

          ii.      <u>Storm Drain Inlet/Designated Sampling Point Maintenance and Cleaning</u>:  On a weekly basis between October 1 and May 31 of each year ("Wet Season"), B2 Auto shall inspect all storm drain inlets, catch basins, Designated Sampling Points, discharge points, filtration/treatment

devices, and other BMPs in place at the Facility to ensure that they are not in a condition that would materially impair their efficacy, and clean out accessible deposited sediment or debris.  B2 Auto shall properly dispose of any dust, sediment, debris, or other removed pollutants.

        iii.      Log of Storm Drain Inlet/Designated Sampling Point Inspections, Maintenance and Cleaning:  B2 Auto shall prepare and maintain a log of the Storm Drain Inlet/Designated Sampling Point Inspections, Maintenance and Cleaning described herein ("Maintenance Log").  The Maintenance Log shall indicate the employee or contractor who completed the maintenance activity and when it was completed.  The Maintenance Log shall be made available for inspection by Baykeeper at any site inspection or otherwise within three (3) business days advance request by Baykeeper.

    b.    **Site Sweeping**:  B2 Auto shall sweep the accessible paved areas of the Facility by hand or vacuum at least two (2) times per week during the Wet Season and in advance of each forecasted rain event. B2 Auto shall keep a log or checklist, as appropriate, of the on-site sweeping activity performed ("Sweeping Log"), and shall direct employees and/or contractors to accurately complete the Sweeping Log.  The Sweeping Log shall indicate the employee or contractor who conducted the sweeping, the location of the sweeping, and the dates the sweeping activities occurred.  The Sweeping Log shall be made available for inspection by Baykeeper at any site inspection or within three (3) business days of a request by Baykeeper.

    c.    **Vehicle Dismantling**:  All vehicles shall be dismantled under cover; dismantling shall include, at a minimum, disconnecting all hoses and wires; draining all oil and all other fluids from the vehicle to the extent feasible; and removing the engine and all other mechanical parts in the vehicle that may contribute to oil and grease or heavy metals in the Facility's stormwater discharges.

    d.    **Abandoned or Inutile Equipment Storage and Removal**:  B2 Auto shall either store under cover or, as soon as feasible, remove from the Facility all abandoned or broken equipment or materials no longer considered for future use that have the potential to serve as the source for pollutant loading.

    e.    **Vehicle and Equipment Management**:  B2 Auto shall implement BMPs to reduce or minimize pollutant release from equipment such as dismantled and non-dismantled vehicles, forklifts,

trucks, and other heavy equipment that are parked or stored in industrial areas of the Facility from which stormwater discharges.  Such BMPs shall include placing drip pans under equipment stored or parked for a week or longer; weekly inspections for evidence of leaks from such equipment; and prompt clean-up of spills, drips, or leaks from such equipment.  Any spilled substances and absorbent materials used in cleaning up spills shall be disposed of in accordance with all local, state, and federal laws and regulations.

       f.      **Vehicle and Equipment Maintenance**:  B2 Auto shall not conduct routine (*i.e.*, non-emergency) vehicle or movable equipment maintenance or repair at the Facility in outdoor, uncovered areas from which stormwater discharges during rainfall events.

       g.      **Training**:  By April 1, 2015, and annually thereafter, and within thirty (30) days of hiring of new employees, B2 Auto shall conduct training for all employees to explain the requirements of the Facility's SWPPP to the extent applicable to such employee.  Training shall focus on the employee's role in implementing various stormwater control measures including, for example, implementation of BMPs, sweeping, vehicle maintenance, or facility inspections.  Training shall be conducted in the relevant language to the extent that such employee is not reasonably able to comprehend training in English.  If and when appropriate, B2 Auto shall integrate any new training requirements resulting from this Decree into the Facility SWPPP.  B2 Auto shall also update the SWPPP, if and when appropriate, to identify the positions responsible for carrying out stormwater management, monitoring, sampling, and SWPPP implementation.

4.   **Structural Best Management Practices**:  By March 9, 2015, B2 Auto shall implement the following structural BMPs at each storm drain inlet at the Facility:

       a.      **Sock Filters**:  During the Wet Season, B2 Auto shall place weighted sock filters designed to treat heavy metals and/or oil and grease, specifically Filtrexx FilterSoxx with MetaLoxx, around each storm drain inlet.  If B2 Auto proposes to change the type of sock filters, the proposed sock filter shall be as effective or more effective than the Filtrexx filters at reducing the specific pollutants discharged from the Facility, and B2 Auto shall amend the SWPPP in accordance with Paragraph 6.

       b.      **In-Situ Storm Drain Inlet Filters:**  B2 Auto shall install storm drain inlet filters,

specifically inlet filters designed and fabricated by Revel Environmental Manufacturing (REM), at each storm drain inlet at the Facility.  If B2 Auto proposes to change the type of storm drain inlet filter, the proposed storm drain inlet filter shall be as effective or more effective than the REM filters at reducing the specific pollutants discharged from the Facility, and B2 Auto shall amend the SWPPP in accordance with Paragraph 6.

5.     **Maintenance of BMP Structural Controls**:  During the Term of the Decree, B2 Auto shall maintain all structural BMPs at the Facility in good operating condition and shall promptly repair any damaged or degraded structural BMPs.  At a minimum, B2 Auto shall replace all structural BMPs in accordance with the manufacturer's instructions.

6.     **Amendment of SWPPP**:  No later than April 1, 2015, B2 Auto shall amend the Facility SWPPP to incorporate the requirements and BMPs set forth in this Section I.  During the Term of the Decree, B2 Auto shall amend the SWPPP within forty-five (45) days to reflect any changes to the discharge points or Designated Sampling Points at the Facility, changes in personnel responsible for stormwater management, or additions or modifications to the BMPs.  Whenever B2 Auto amends the SWPPP during the Term of this Decree, other than in accordance with an Action Plan prepared and submitted to Baykeeper pursuant to Paragraphs 12-16, B2 Auto shall submit the updated SWPPP to Baykeeper within ten (10) business days of the update.  Baykeeper shall have thirty (30) days from receipt of the amended SWPPP to propose any changes to the amended portions of the SWPPP.  B2 Auto shall consider each of Baykeeper's proposed changes to the Action Plan and accept them or timely request, in accordance with Paragraph 25, a meet and confer to discuss.  Compliance with the SWPPP, as amended in accordance with this Paragraph provision, shall at all times be a requirement of this Decree.

7.     **Additional BMPs:**  The BMPs included in this Section constitute a preliminary approach to stormwater management at the Facility for the first year of the Decree.  If, after implementing these BMPs, the sampling conducted in accordance with Section II indicates that the Facility's stormwater discharges continue to exceed the Target Levels in Exhibit 1, or otherwise do not meet water quality standards, B2 Auto shall propose additional BMPs in an Action Plan prepared in accordance with Paragraph 12.

## II.      SAMPLING, MONITORING, INSPECTION & REPORTING

8.      **Sampling Program - Stormwater**:  During the 2014-15 Wet Season and throughout the Term of this Decree, B2 Auto shall collect and analyze stormwater samples from all of its Designated Sampling Points, indicated on the Site Map prepared pursuant to Paragraph 2, according to the following sampling schedule:

a.      B2 Auto shall collect and analyze samples from all Designated Sampling Points during the first three (3) storm events of the Wet Season that meet the conditions of Section B.5.b under the Industrial Stormwater Permit or, after the 2014-15 Wet Season, that meet the requirements for a "Qualifying Storm Event," as defined in Section XI.B.1 of the New General Permit.  Each stormwater sample must represent post-filtration conditions (i.e. collected after flowing through the drop-inlet filter) and be analyzed for the presence of each of the parameters listed on the Sampling Chart attached hereto as Exhibit 1, except B2 Auto is not required to analyze samples for mercury if mercury is not detected in the first sample analyzed under this Decree.

b.      If B2 Auto is unable to take a sample from any of the Designated Sampling Points during any of the first three storm events of the Wet Season, B2 Auto shall continue to sample from any subsequent storm events until three samples have been collected from each Designated Sampling Point in that Wet Season.

c.      In the event that B2 Auto is unable to collect three samples from each Designated Sampling Point in a Wet Season, B2 Auto shall explain in writing in the End-of-Season Summary under Paragraph 11 why it was unable to collect the required sample(s).

d.      Should industrial processes materially change at the Facility, B2 Auto shall conduct sampling for any additional toxic priority pollutants listed in 40 C.F.R. § 131.38 likely to be present in the Facility's stormwater discharges in significant quantities as a result of the changed industrial processes.  B2 Auto shall notify Baykeeper of any such changes within thirty (30) days of such a change.

9.      **Certified Lab**:  Except for pH samples, which will be measured with an on-site calibrated pH meter in order to meet the 15 minute holding time requirement, B2 Auto shall have all stormwater samples collected pursuant to this Decree delivered to a California state certified environmental

laboratory for analysis within the time needed for analysis according to laboratory method allowable hold times.  The laboratory shall thereafter conduct analysis sufficient to detect individual constituents at or below the levels set forth in the attached Exhibit 1.

10.  **Sample Result Reporting**:  During the Term of this Decree, B2 Auto shall provide complete results from sampling and analysis to Baykeeper within ten (10) calendar days of receipt of the laboratory report from each sampling event.

11.  **End-of-Season Summary**:  By July 15 following each Wet Season that occurs during the Term of this Decree, B2 Auto shall prepare and send to Baykeeper an End-of-Season Summary that includes: (1) a summary chart with all of the sample results from the previous Wet Season, including the constituent concentration(s) from Designated Sampling Point sample(s) collected at the Facility exceeding the Target Levels in Exhibit 1 ("Exceedance(s)"); and (2) identification of any new BMP(s) that B2 Auto has implemented or will implement.

12.  **Action Plan**:  If any stormwater sample result during a Wet Season exceeds any Target Level set forth in Exhibit 1 ("Exceedance(s)"), B2 Auto shall submit an Action Plan in addition to an End-of-Season Summary by July 15 following each Wet Season that occurs during the Term of the Decree.

13.  **Contents of Action Plan**:  If an Action Plan is required, it shall include the following:

  a.  The possible sources of the Exceedance(s) during the applicable Wet Season;

  b.  A proposal for and evaluation of new site-specific BMPs designed to reduce pollutants in future stormwater discharges to the Target Levels in Exhibit 1 or to achieve BAT and BCT; and

  c.  A schedule to implement any revised and/or additional BMPs by the earliest practicable time, and no later than October 1 of the next Wet Season.  In any Action Plan, B2 Auto shall consider appropriate structural BMPs as necessary to adequately address its Exceedances.

14.  **Baykeeper Review of Action Plan**:  Baykeeper shall have thirty (30) days from receipt to propose revisions to the Action Plan.  Within thirty (30) days of receiving Baykeeper's proposed revisions, B2 Auto shall consider each of Baykeeper's recommended revisions to the Action Plan and accept them or timely request, in accordance with Paragraph 25, a meet and confer to discuss.

15.  **Implementation of Action Plan**:  B2 Auto shall implement the Action Plan(s) adopted pursuant to this Decree as an obligation of this Decree.

16.   **Amendment of Facility SWPPP**: Within forty-five (45) days after BMPs set forth in an Action Plan pursuant to this Decree are implemented, B2 Auto shall amend the Facility SWPPP to include all BMP revisions or additions not otherwise already implemented and included in the SWPPP.  Within ten (10) business days thereafter, B2 Auto shall provide Baykeeper with a copy of such revised SWPPP.

17.   **Evaluation of BMPs**: During each Wet Season during the Term of the Decree, B2 Auto shall evaluate the Facility BMPs included in this Decree and any current or previous Action Plans, and, if B2 Auto has exceeded Target Levels, make reasonable efforts to reduce the concentrations to Target Levels or otherwise meet BAT or BCT, as appropriate, for the remainder of the Wet Season.  B2 Auto shall use the results from subsequent stormwater samples as they become available to assist with its ongoing evaluation of the effectiveness of BMPs.

18.   **Stipulated Payments:**  B2 Auto shall pay the following stipulated payments during the Term of this Decree, unless B2 Auto invokes dispute resolution under Paragraph 25, and Baykeeper or the Court determines that B2 Auto's failure to comply was reasonably excusable and timely cured.

   a.     $500 for each failure to collect a sample required under this Decree;

   b.     $100 per business day (Monday through Friday, excluding state and federal holidays) after the report due date for each failure to timely submit any document, report or other communication required under this Decree; and

   c.     $500 per business day past the due date that B2 Auto fails to submit any payments due under Paragraphs 21-23 of this Decree.

   d.     Any stipulated payments described above shall be paid to Baykeeper within thirty (30) days of notification of the failure to comply, or, if B2 Auto has invoked dispute resolution under Paragraph 25, within thirty (30) days of the dispute resolution process terminating in favor of Baykeeper.  Stipulated payments calculated on a daily basis shall not accrue during the pendency of a dispute resolution process under Paragraph 25.

19.   **Site Access**:  During the Term of this Decree, B2 Auto shall permit representatives of Baykeeper to perform one (1) physical inspection per year of the Facility during operating hours ("Site Inspection").  Baykeeper shall provide B2 Auto three (3) business days notice in advance of such Site

Inspections, except that B2 Auto shall have the right to deny access if circumstances would make the inspection unduly burdensome and pose significant interference with business operations or any party/attorney, or the safety of individuals.  In such case, B2 Auto shall specify at least two (2) dates within the two (2) weeks thereafter upon which a physical inspection by Baykeeper may proceed. Baykeeper shall comply with all safety instructions provided to Baykeeper by B2 Auto staff during all Site Inspections.  During Site Inspections, Baykeeper shall be allowed to inspect and sample any stormwater discharges, logs, and take photos and/or videos.  All sampling shall be conducted by Baykeeper staff trained to take water quality samples, with a split sample provided to both Baykeeper and B2 Auto at the time of sampling.  Baykeeper shall provide B2 Auto with a copy of all sampling reports, photographs and/or video within a reasonable time after the site inspection, not to exceed fourteen (14) days after Baykeeper's receipt of any sampling reports from split samples, and seven (7) days after the site inspection, for photographs and/or video.

20.   **Reports**:  During the Term of this Decree, B2 Auto shall provide Baykeeper with a copy of all documents required to be submitted to the Regional Water Board or the State Water Board concerning the Facility's compliance with the Industrial Stormwater Permit or, when it comes into effect, with the New General Permit.  Such documents and reports shall be transmitted to Baykeeper via electronic mail at the time the documents are submitted to the Regional Water Board or State Water Board.

**III.     MITIGATION, FEES AND COSTS**

21.   **Environmental Mitigation Funding**:  As mitigation for the alleged violations set forth in Baykeeper's Notice and Complaint, within thirty (30) days of the Court Approval Date, B2 Auto shall pay the sum of eight thousand dollars ($8,000) to the Rose Foundation for the Environment, an environmental non-profit organization, for projects that will benefit the San Francisco Bay watershed. The Rose Foundation for the Environment reports the grant funding made with the tendered funds to the Court, U.S. Department of Justice, and the Parties, setting forth the recipient and purpose of the funds.  Payment shall be made to the Rose Foundation for the Environment, 1970 Broadway, Suite 600, Oakland, CA 94612, Attn: Tim Little, with concurrent notice to Baykeeper.

22.   **Reimbursement of Fees and Costs**:  B2 Auto shall reimburse Baykeeper in the amount of twenty thousand dollars ($20,000) to help cover Baykeeper's reasonable investigation, expert, and

attorneys' fees and costs, and all other reasonable costs incurred as a result of investigating the activities at the Facility related to this Decree, bringing these matters to B2 Auto's attention, and negotiating a resolution of this action.  B2 Auto shall tender said payment, payable to Baykeeper, in two installments:  one installment of $12,000 by June 1, 2015, and a second installment of $8,000 by August 1, 2015.

23.   **Compliance Monitoring Funds:**  B2 Auto shall provide to Baykeeper a total of six thousand dollars ($6,000) for costs and fees associated with monitoring B2 Auto's compliance with this Decree through the termination date of this agreement.  The total compliance monitoring fund payment, made payable to Baykeeper, shall be made by August 1, 2015.

24.   **Interest on Late Payments:**  B2 Auto shall pay interest on any payments, fee or costs owed to Baykeeper under this Decree that Baykeeper has not received by the date due.  The interest shall accrue starting the first day after the payment is due and shall be computed at 1.5% per month (18% per year).

25.   **Dispute Resolution**: If a dispute under this Decree arises, or a Party believes that a violation of this Decree has occurred, the Party asserting the dispute or violation shall notify in writing the other Party promptly.  Any violation under this Decree capable of being cured shall be deemed cured if, within five (5) business days of first receiving notice of the alleged violation, or within such other period approved in writing by the Party making such allegation, which approval shall not be unreasonably withheld, the party allegedly in violation has completed such cure or, if the breach or default can be cured but is not capable of being cured within such five (5) business day period, has commenced and is diligently pursuing to completion such cure.  Otherwise, the Parties shall meet and confer within ten (10) business days of issuance of the notice of dispute or violation, to determine whether a violation of this Decree has occurred and/or to develop a mutually agreed upon plan, including implementation dates, to resolve the dispute.  If the Parties fail to meet and confer or the meet and confer does not resolve the issue, after at least seven (7) business days have passed after the meet and confer occurred or should have occurred, either Party shall be entitled to all rights and remedies under the law, including bringing a motion before the United States District Court for the Northern District of California for the limited purpose of enforcing the terms of this Decree.  The

Parties shall be entitled to seek fees and costs incurred in any such action pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. §1365(d), and applicable case law interpreting such provisions.

## IV.   JURISDICTION OVER PARTIES AND SUBJECT MATTER OF CONSENT DECREE

26.   **Jurisdiction.**   For the purposes of this Decree, the Parties stipulate that the United States District Court of California, Northern District of California, has jurisdiction over the Parties and subject matter of this Decree.  The Parties stipulate that venue is appropriate in the Northern District of California and that Baykeeper has standing to bring the Complaint.  B2 Auto reserves all other rights and defenses in any such proceeding.

27.   **Jurisdiction to Enforce Consent Decree.**   The Court referenced above shall retain jurisdiction over the Parties and subject matter of this Decree for the purpose of adjudicating all disputes among the Parties that may arise under the provisions of this Decree.  The Court shall have the power to enforce this Decree with all available legal and equitable remedies.

28.   **Submission of Consent Decree to DOJ.**   Within three (3) business days of receiving all of the Parties' signatures to this Decree, Baykeeper shall submit this Decree to the U.S. Department of Justice ("DOJ") and EPA for agency review consistent with 40 C.F.R. §135.5.  The agency review period expires forty-five (45) calendar days after receipt by the DOJ, evidenced by correspondence from DOJ establishing the review period.  In the event DOJ comments negatively on the provisions of this Decree, the Parties agree to meet and confer to attempt to resolve the issues raised by DOJ.

29.   **Dismissal of Complaint.**   If there is no objection by DOJ to this Decree, the Parties shall: (a) request the approval and entry of this Decree in the exact form presented to DOJ; and (b) concurrently stipulate to and request dismissal of this action with prejudice.  Such dismissal shall not affect the rights and obligations of the Parties under this Decree, nor shall it affect the power of the Court to enforce this Decree.

## V.   WAIVER AND RELEASES

30.   **Baykeeper Waiver and Release of Noticed Parties**:  Baykeeper, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors and assigns, releases B2 Auto, its officers, directors, employees, members, shareholders, owners,

parents, subsidiaries, affiliates, successors or assigns, agents, attorneys and other representatives from and waives all claims raised in the 60-Day Notice and/or the Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed or which could have been claimed for matters included in the 60-Day Notice and/or the Complaint ("Baykeeper Released Claims").  During the term of the Decree, Baykeeper agrees that neither Baykeeper, its officers, executive staff, or members of its governing board, nor any organization under the control of Baykeeper, will file or support any lawsuit against B2 Auto seeking relief for alleged violations of the Clean Water Act, the Industrial Stormwater Permit, or the New General Permit. Enforcement of this Decree is Baykeeper's exclusive remedy for any violation of the terms contained herein.

31.    **B2 Auto's Waiver and Release of Baykeeper**:  B2 Auto, on its own behalf and on behalf of its officers, directors, employees, members, shareholders, owners, parents, subsidiaries, affiliates, or their successors or assigns release Baykeeper and its officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns from, and waive all claims which arise from or pertain to, the 60-Day Notice and/or the Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed for matters included in the 60-Day Notice and/or the Complaint ("B2 Released Claims").

32.    **Scope of Mutual Releases**.  It is understood and agreed by the Parties that the claims released in Paragraphs 30-31 include all claims of every nature and kind with respect to the Baykeeper Released Claims and the B2 Released Claims, whether known or unknown, suspected, or unsuspected. All rights with respect to the Baykeeper Released Claims and the B2 Released Claims under section 1542 of the California Civil Code are hereby expressly waived. Section 1542 provides as follows:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the Release, which if known by him or her must have materially affected his or her settlement with the debtor.**

The Parties acknowledge that they may hereafter discover facts different from, or in addition to, those which they now know or believe to be true with respect to the Baykeeper Released Claims and the B2

Released Claims, and the Parties agree that this Agreement, including, without limitation, the releases contained herein, shall be and remain effective in all respects notwithstanding such different or additional facts or the discovery thereof.

## VI.   MISCELLANEOUS PROVISIONS

33.   **Effective Date**:  The Agreement shall be effective upon mutual execution by all Parties ("Effective Date"), but shall not be enforceable until the Court Approval Date.

34.   **Term of Consent Decree**:  This Decree shall continue in effect between the Effective Date and September 30, 2017, or, if a Party has invoked dispute resolution pursuant to Paragraph 25 before September 30, 2017, the date when the dispute is resolved (the "Term"), at which time the Decree, and all obligations under it, shall automatically terminate.

35.   **Early Termination**:  If B2 Auto should cease industrial operations at the site and file a Notice of Termination ("NOT") under the Industrial Stormwater Permit or the New General Permit prior to the termination date of this Decree, B2 Auto shall send Baykeeper a copy of the proposed NOT concurrent with its submittal to the Regional Water Board.  Within ten (10) days of the Regional Water Board's approval of the NOT, B2 Auto shall notify Baykeeper in writing of the approval and remit all outstanding payments, including stipulated payments, to Baykeeper.  In the event a new successor or assign continues industrial operations at the site and assumes responsibility for implementation of this Decree pursuant to Paragraph 47, B2 Auto shall notify Baykeeper within ten (10) days of the transition.

36.   **Execution in Counterparts**:  The Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

37.   **Signatures**:  The Parties' signatures to this Decree transmitted by facsimile or electronic mail transmission shall be deemed binding.

38.   **Construction**:  The language in all parts of this Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning.  The captions and paragraph headings used in this Decree are for reference only and shall not affect the construction of this Decree.

39.   **Authority to Sign**:  The undersigned are authorized to execute this Decree on behalf of their respective Party and have read, understood and agreed to all of the terms and conditions of this Decree.

40.   **Integrated Consent Decree**:  All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Decree are contained herein.  This Decree supersedes any and all prior and contemporaneous agreements, negotiations, correspondence, understandings, and communications of the Parties, whether oral or written, respecting the matters covered by this Decree.

41.   **Severability**:  In the event that any of the provisions of this Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

42.   **Choice of Law**:  This Decree shall be governed by the laws of the United States or, where applicable, the laws of the State of California, without regard to choice-of-law principles.

43.   **Full Settlement**:  This Decree constitutes a full and final settlement of this matter.

44.   **No Admission**: The Parties enter into this Decree for the purpose of avoiding prolonged and costly litigation. Nothing in this Decree shall be construed as, and B2 Auto expressly does not intend to imply, any admission as to any fact, finding, conclusion, issue of law, or violation of law, nor shall compliance with this Agreement constitute or be construed as an admission by B2 Auto of any fact, finding, conclusion, issue of law, or violation of law. However, this paragraph shall not diminish or otherwise affect the obligation, responsibilities, and duties of the Parties under this Agreement.

45.   **Negotiated Agreement**:  The Parties have negotiated this Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Parties jointly prepared this Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

46.   **Modification of the Agreement**:  This Decree, and any provisions herein, may not be changed, waived, or discharged unless by a written instrument signed by each of the Parties.

47.   **Assignment**:  Subject only to the express restrictions contained in this Decree, all of the rights, duties and obligations contained in this Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns.

48.    **Mailing of Documents to Baykeeper/Notices/Correspondence**:  Any notices or documents required or provided for by this Decree or related thereto that are to be provided to Baykeeper pursuant to this Decree shall be, to the extent feasible, sent via electronic mail transmission to the e-mail address listed below or, if electronic mail transmission is not feasible, via certified U.S. Mail with return receipt, or by hand delivery to the following address:

San Francisco Baykeeper
Attention: Nicole Sasaki
1736 Franklin St., Suite 800
Oakland, CA 94612
E-mail:  nicole@baykeeper.org

Unless requested otherwise by B2 Auto, any notices or documents required or provided for by this Decree or related thereto that are to be provided to B2 Auto pursuant to this Decree shall, to the extent feasible, be provided by electronic mail transmission to the e-mail addresses listed below, or, if electronic mail transmission is not feasible, by certified U.S. Mail with return receipt, or by hand delivery to the addresses below:

B2 Auto Dismantler
Attention: Tan Duy
245 Leo Ave.
San Jose, CA 95112
Email: b2auto408@gmail.com

With copies sent to:

Donald E. Sobelman, Esq.
Barg Coffin Lewis & Trapp, LLP
350 California Street, 22nd Floor
San Francisco, CA 94104
Email: des@bcltlaw.com

Jeanne Eber
Bloom Investment Company, LP
7 Mann Drive
Kentfield, CA 94904
Email: jeber@biclp.com

Notifications or communications shall be deemed submitted on the date that they are emailed, or postmarked and sent by first-class mail, or deposited with an overnight mail/delivery service.  Any changes of address or addressees shall be communicated in the manner described above for giving notices.

49.    **No Third-Party Beneficiaries**:  This Decree is made for the sole benefit of the Parties, and no

CONSENT DECREE, CASE NO. 5:15-CV-00208                                            17

other person or entity shall have any rights or remedies under or by reason of this Decree, unless otherwise expressly provided for therein.

50. **Force Majeure**:  No Party shall be considered to be in default in the performance of any of its obligations under this Decree when performance becomes impossible due to circumstances beyond the Party's control, including without limitation any act of God, act of war or terrorism, fire, earthquake, and flood.  "Circumstances beyond the Party's control" shall not include normal inclement weather, economic hardship, or inability to pay.  Any Party seeking to rely upon this Paragraph shall have the burden of establishing that it could not reasonably have been expected to avoid, and which by exercise of due diligence has been unable to overcome, the impossibility of performance.

51. **Impossibility of Performance**: Where implementation of the actions set forth in this Decree becomes impossible within the deadlines set forth in those paragraphs, despite the timely good faith efforts of the Parties, the party who is unable to comply shall notify the other in writing within seven (7) business days of the date that the failure becomes apparent, but in any case before the deadline for the obligation, and shall describe the reason for the nonperformance.  The Parties agree to meet and confer in good faith concerning the non-performance pursuant to Paragraph 25, above.  If the Parties concur that the non-performance was or is impossible, despite the timely good faith efforts of one of the Parties, new performance deadlines shall be established.  In the event that the Parties cannot timely agree upon the terms of such a stipulation, either Party shall have the right to seek enforcement of this agreement as provided in Paragraph 25, above.

52. If for any reason the Court should decline to approve this Decree in the form presented, the Parties shall use their best efforts to work together to modify the Decree within thirty (30) days so that it is acceptable to the Court.  If the Parties are unable to modify this Decree in a mutually acceptable manner, this Decree shall become null and void.

The settling Parties hereto enter into this Consent Decree, Order and Final Judgment and respectfully submit it to the Court for its approval and entry as a final judgment.

[SIGNATURES ON NEXT PAGE]

SAN FRANCISCO BAYKEEPER

Date: 1/14/2015

_Erica A. Maharg_

Erica A. Maharg
Staff Attorney, San Francisco Baykeeper


B2 Auto Dismantler/Muoi Phan

Date:


_____

By:
Muoi Phan


APPROVED AND SO ORDERED, this ___ day of _____.

UNITED STATES DISTRICT JUDGE


_____

1    SAN FRANCISCO BAYKEEPER

2        Date:

3

4        _____

5        Erica A. Maharg
         Staff Attorney, San Francisco Baykeeper

6

7        B2 Auto Dismantler/Muoi Phan

8        Date:  1/16/15

9

10       _____

11       By:
         Muoi Phan

12

13   APPROVED AND SO ORDERED, this 13 day of  March 2015          .

14       UNITED STATES  MAGISTRATE JUDGE

15

16       Paul S. Grewal

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

# EXHIBIT 1

### Target Levels for Stormwater Sampling

| Constituent | Target Levels | Source |
|---|---|---|
| **pH** | 6.5– 8.5 SU | *San Francisco Bay Basin Water Quality Control Plan, Water Quality Objective* |
| **Total Suspended Solids** | 100 mg/L | *Multi-Sector General Permit 2008 Sector-Specific Benchmark* |
| **Oil and Grease** | 15 mg/L | *Multi-Sector General Permit 2000 Benchmark* |
| **Total Aluminum** | 0.75 mg/L | *Multi-Sector General Permit 2008 Sector-Specific Benchmark* |
| **Total Copper** | 0.013 mg/L | *San Francisco Bay Basin Water Quality Control Plan, Water Quality Objective* |
| **Total Iron** | 1.0 mg/L | *Multi-Sector General Permit 2008 Sector-Specific Benchmark* |
| **Total Zinc** | 0.12 mg/L | *San Francisco Bay Basin Water Quality Control Plan, Water Quality Objective* |
| **Total Mercury** | .0024 mg/L | *San Francisco Bay Basin Water Quality Control Plan, Water Quality Objective* |